UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN PISTACCHIO**,<br>　　　　　Plaintiff,<br>　　v.<br>**APPLE INC.**,<br>　　　　　Defendant. | Case No. 4:20-cv-07034-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 40 |

　　　　On December 17, 2020, defendant Apple Inc. filed a motion to dismiss plaintiff John Pistacchio's class action complaint pursuant to Fed. R. Civ. P. 12(b)(6), and a supporting request for judicial notice for the Apple App Store Review Guidelines (the "Guidelines"). The Court held a regularly scheduled hearing on March 9, 2021 by the Zoom platform. Having fully reviewed and considered all papers and arguments, and for the reasons stated both on the record, and set forth below, the Court hereby **GRANTS** Apple's request for judicial notice and **GRANTS** Apple's motion to dismiss.[1]

　　　　<u>Request for Judicial Notice</u>.  The Court **GRANTS** the request to take judicial notice through the incorporation-by-reference doctrine of Exhibit A to the Declaration of Meredith R. Dearborn (Dkt. No. 42), which is a true and correct copy of the Guidelines. *See, e.g.*, *Davis* v. *HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160-61 (9th Cir. 2012); *Khoja* v. *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-999 (9th Cir. 2018).  Pistacchio repeatedly quotes or refers to the Guidelines in the complaint and the Guidelines form the basis of his claims. *See, e.g.*, Complaint ¶¶ 48, 59, 79, 79 n.11, 83 n.12, 87 n.18, 89 n.19, 90 n.21, 118 n.31, 82, 83–90, 98, 101–02, 111, 113, 116–20, 145, 165–66, 191.

---

[1] This Order assumes a reader's familiarity with the underlying background of this matter.

Motion to Dismiss. The standards for a motion to dismiss are well-known and not in dispute. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Antitrust Claims Generally*: the Court finds that Pistacchio's antitrust claims must be dismissed because such claims rest on an insufficiently pled narrow product market. Here, Pistacchio pleads that the relevant market definition is as follow:

> [T[he market for subscription-based mobile gaming services on iOS devices (the "iOS Subscription-Based Mobile Gaming Services Market"). This market is comprised of a single distribution channel, the App Store, which is the only way that iOS users may access subscription-based mobile gaming services.

Complaint ¶ 56.

In general, "a threshold step in any antitrust case is to accurately define the relevant market, which refers to 'the area of effective competition.'" *Federal Trade Commission v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (quoting *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2285 (2018)). "The relevant market must include both a geographic market and a product market." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). The latter "must encompass the product at issue as well as all economic substitutes for the product." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008); *see also id.* ("The consumers do not define the boundaries of the market; the products or producers do [and] the market must encompass the product at issue as well as all economic substitutes for the product."). "Economic substitutes have a 'reasonable interchangeability of use' or sufficient 'cross-elasticity of demand' with the relevant product." *Hicks*, 897 F.3d at 1120 (quoting *Newcal*, 513 F.3d at 1045). "Including economic substitutes ensures that the relevant product market encompasses 'the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business.'" *Id.* (quoting *Newcal*, 513 F.3d at 1045); *see also United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 393 (1956 ("Illegal power must be appraised in

2

terms of the competitive market for the product.").

Here, Pistacchio's current relevant market definition suffers from numerous deficiencies given the allegations of the complaint. Indeed, the relevant market definition contains sparse supporting allegations. First, as noted, Pistacchio is required, and has not included appropriate allegations demonstrating that there are *not* appropriate economic substitutes for Apple Arcade on the iOS platform. Pistacchio identifies in the complaint several allegedly competing subscription services, all of which are cloud gaming services, offered by Microsoft Corporation (xCloud), Facebook Inc. (Facebook Gaming), and Google LLC (Stadia). The complaint offers no specific allegations supporting the sole focus of the market definition on cloud gaming alternatives as opposed to the broader video game market generally, including those individually sold both in the Apple App Store or by competitors on computer or console platforms, nor does the complaint contain allegations supporting the narrowing of a market to consideration of a subscription based payment model. *See Hicks*, 897 F.3d at 1120-23 (affirming dismissal of antitrust claims because the pled relevant market definition was "not natural," "artificial," and "contorted to meet their litigation needs" and did not include reasonably interchangeable products or economic substitutes); *Streamcast Networks, Inc.* v. *Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1095 (C.D. Cal. 2007) (rejecting the plaintiff's narrow market definition where alternatives "permit[ted] users to accomplish the same basic task"); *Federal Trade Commission* v. *Lab. Corp. of Am.*, No. SACV 10-1873 AG (MLGx), 2011 WL 3100372, at *18 (C.D. Cal. Feb. 22, 2011) (stating courts "routinely recognize that otherwise identical products are not in separate markets simply because consumers pay for those products in different ways"); *hiQ Labs, Inc.* v. *LinkedIn Corp.*, No. 17-cv-03301-EMC, 2020 WL 5408210, at *7 (N.D. Cal. Sept. 9, 2020) (holding that plaintiff had "not yet shown that it is *plausible* that the relevant market should be defined as that which uses only [defendant's] data" where alternative public channels exist to obtain similar data (emphasis in original)). Moreover, Pistacchio has not yet adequately pled that the relevant market should itself be limited to the iOS platform.[2]

---

[2] At this juncture, in light of the deficiencies in the allegations of the complaint detailed herein, the Court makes no finding as to whether Pistacchio may maintain a claim based on a

3

Even assuming Pistacchio could correct the gaping inadequacy of the complaint, plaintiff offers contradicting allegations as to the *restrictions* that Apple has placed on its alleged competitors. Pistacchio alleges that Apple has placed certain restrictions on subscription cloud gaming or game streaming services, but concedes that workarounds do in fact exist to reach these same iOS consumers. At the hearing and in the motion briefing, Pistacchio's counsel attempts to distinguish these alternative methods by asserting that these methods require consumers to accept a lack of certain key features and a degradation of game play, and that Apple Arcade in connection with an iOS device offers a more immersive gaming experience. No such allegations are pled in the operative complaint.

A further additional problem is antitrust damage. The complaint is wholly lacking in any substantive allegations regarding the alleged "supracompetitive" price. Such a bald conclusory statement is insufficient. In sum, Pistacchio has failed to address his own admissions and allegations that alleged competitors can still reach iOS customers offered through an internet browser, a Web app, or a remote desktop, all options on iOS devices, or by following Apple's own guidelines and allowing games to be downloaded individually. *See* Guidelines § 4.9; *Hicks*, 897 F.3d at 1120-23 (affirming dismissal antitrust claims because plaintiffs-appellants otherwise ignored alternative channels or economic substitutes in reaching consumers).[3]

---

single product market—here, the iOS device market. *See, e.g.*, *Epic Games, Inc. v. Apple Inc.*, --- F. Supp. 3d ---, 2020 WL 5993222, at *10 (N.D. Cal. Oct. 9, 2020) (finding that plaintiff's "relevant market definition that iOS App Distribution is an 'aftermarket' of the smartphone OS market is plausible"). As the Court noted in *Epic Games*, "such '[s]ingle-brand markets are, at a minimum, extremely rare' and courts have rejected such market definitions '[e]ven where brand loyalty is intense.'" *Id.* at *8 (quoting *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008) (internal quotation marks omitted)). *See also Psystar*, 586 F. Supp. 2d at 1198 ("Antitrust markets consisting of just a single brand, however, are not per se prohibited . . . . In theory, it may be possible that, in rare and unforeseen circumstances, a relevant market may consist of only one brand of a product.").

[3] The Court further notes that the complaint fails to explain *how* antitrust conduct occurred where a *new* product was introduced and *access* to the platform was always available. The fact that competitors may have required a few months to develop a competing product does not support a claim of antitrust conduct. Indeed, as discussed at the motion hearing, by the time Pistacchio filed the complaint, the Guidelines *explicitly* allowed cloud gaming (or game streaming) services to access iOS users through several alternative means to the Apple App Store, including through a web browser or remote desktop. Apple also highlighted that while the rules did not explicitly permit this practice prior to their amendment in around September 2020, the Guidelines still permitted these services as the Guidelines did not reach into conduct over the internet (*i.e.* web

Accordingly, the Court finds all of Pistacchio's antitrust claims deficient for failure to adequately allege a product market. Consequently, the state law claims which are based thereon also fail. The Court is doubtful that Pistacchio can address the fundamental inadequacies of the complaint. However, in light of the liberal policy in granting leave to amend, the Court provides an opportunity to Pistacchio to correct these deficiencies. *See Hicks*, 897 F.3d at 1124 (vacating in part and remanding in part where the district court failed to consider granting leave to amend to address the inadequacies of the market definition); *hiQ Labs*, 2020 WL 5408210, at *7 (providing leave to amend to address deficiencies in the allegations underlying the market definition).

*Sherman Act Section 2 Claim (Count 2)*: As discussed at the motion hearing, Pistacchio's Sherman Act section 2 denial of essential facility claim (Count 2) must be dismissed because Pistacchio, as a consumer, may not bring an essential facilities claim. *See* Complaint ¶ 14; *Ferguson* v. *Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 983-84 (9th Cir. 1988).

*Unjust Enrichment (Count 6)*: As discussed as the motion hearing, the Court strikes from the complaint the nationwide class allegations related to the unjust enrichment claim (Count 6). As the Court has previously stated in considering class certification on an unjust enrichment claim:

> Plaintiffs, though, cannot point to a single case in this Circuit to [certify a nationwide unjust enrichment class] since the Ninth Circuit addressed the issue in *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012). This is unsurprising given that, in *Mazza*, the Ninth Circuit unequivocally held that the "elements necessary to establish a claim for unjust enrichment . . . vary materially from state to state." *Id*. It is hard to imagine a clearer directive from our Circuit on this issue.

*Bias v. Wells Fargo & Company*, 312 F.R.D. 528, 540 (N.D. Cal. 2015). Whether an unjust enrichment claim could even survive would depend on whether Pistacchio can plead a quasi-contract claim. As noted above, a bald conclusory allegation of supracompetitive prices fails to satisfy pleading requirements. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th

---

browsers). To the extent that Pistacchio attempts to file an amended complaint, plaintiff should provide sufficient allegations to determine what the specific antitrust conduct and injury are at issue in light of the foregoing.

Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'").

<u>Conclusion</u>.  Accordingly, the Court **HEREBY ORDERS** as follows:

(1) The Court **GRANTS** Apple's request for judicial notice of the Guidelines;

(2) The Court **GRANTS** Apple's motion to dismiss the complaint;

    (a) Pistacchio's essential facilities claim (Count 2) is **DISMISSED WITH PREJUDICE**;

    (b) Allegations related to Pistacchio's unjust enrichment claim (Count 6) are **STRICKEN** to the extent that plaintiff seeks to certify a nationwide class of consumers; and

    (c) The complaint is otherwise **DISMISSED WITHOUT PREJUDICE** and the Court **GRANTS** leave to amend these claims.

In light of the foregoing, Pistacchio shall file an amended complaint by **March 30, 2021**. In filing an amended complaint, Pistacchio's counsel are reminded to comply with their Rule 11 obligations.  To the extent Pistacchio wishes to stand on this version of the complaint, Pistacchio shall file a notice on or before **March 30, 2021**, at which point the Court will enter an order dismissing the case with prejudice which Pistacchio can appeal if he so chooses.

Apple shall thereafter respond to any amended complaint by **April 20, 2021**.  To the extent that Apple files a motion to dismiss, an opposition shall be due from Pistacchio on **May 11, 2021**, and a reply shall be due from Apple on **May 25, 2021**.  The parties may calendar the renewed motion for **June 15, 2021**.

This Order terminates Docket Number 40.

**IT IS SO ORDERED.**

Dated: March 11. 2021

                                                         **YVONNE GONZALEZ ROGERS**
                                                         **UNITED STATES DISTRICT JUDGE**